AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

| LODGED
CLERK, U.S. DISTRICT COURT
04/10/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: AP DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED
CLERK, U.S. DISTRICT COURT
4/10/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: D.C. DEPUTY |

United States of America

v.

JESUS ARMANDO AISPURO-NUNEZ,

Defendant(s)

Case No.  5:25-mj-00188

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 8, 2025 in the county of Riverside in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Deportation |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Harvey Nunez
*Complainant's signature*

Harvey Nunez, Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: April 10, 2025

*Judge's signature*

City and state: Riverside, California

Honorable Shashi H. Kewalramani
*United States Magistrate Judge*

AUSA: Cameron C. Vanderwall (x0647)

**AFFIDAVIT**

I, Harvey Samuel Nunez, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Jesus Armando AISPURO-NUNEZ ("AISPURO-NUNEZ" or "defendant"), charging him with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Deportation.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT BORDER PATROL AGENT HARVEY NUNEZ

3. I am a United States Border Patrol Agent ("BPA") with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since August 6, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as

well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

### III. STATEMENT OF PROBABLE CAUSE

#### A. AISPURO-NUNEZ Found in the United States

4. Based on a Border Patrol Report of Apprehension or Seizure, dated April 8, 2025, by BPA Raymer, which I have reviewed, I know the following:

   a. On April 8, 2025, Border Patrol Agents Perez and Herrera from the Indio Border Patrol Station were working the Interstate 10 corridor near Desert Center, California. According to BPA Perez, Interstate 10 corridor is a known smuggling route used by Transnational Criminal Organizations to transport undocumented individuals and contraband.

   b. BPA Perez and BPA Herrera were in their full USBP uniforms and in a USBP vehicle that identified them law enforcement officers. BPA Perez and BPA Herrera were observing eastbound traffic on Interstate 10 (I-10) near the Monterey Rd. onramp to I-10.

   c. At approximately 1:30 p.m., BPA Perez and BPA Herrera observed a burgundy Buick Rainer (the "Buick"), bearing California license plate number 5TPU327 and traveling east toward their location. The Buick was traveling in the number one lane (fast lane) of the three-way divided highway. As the Buick passed their location, the officers noticed that the driver hit the brakes abruptly and significantly reduced his speed to below the speed limit. The Buick then quickly switched to the middle

lane, forcing itself between two vehicles. This appeared to the officers to be an unnecessary lane change given that there were no other vehicles in front of the Buick. In their experience, this tactic is common for illegal aliens and or/alien smugglers attempting to create distance between themselves and law enforcement to avoid detection. The officers entered onto I-10 and positioned their marked vehicle behind the Buick to query the vehicle's license plate.

      d.   While following the Buick, the officers requested vehicle checks which eventually revealed that the vehicle had no registered owner on file and an address listed in Galt, California. The officers then positioned their service vehicle on the left side of the Buick, parallel to it. The officers observed one occupant in the vehicle, a male driver, who maintained a rigid upright posture as he continued driving. The Buick then made another lane change and drastically slowed in speed again. The officers recognized this as a driving tactic commonly employed by those engaged in illicit activity as a means of causing law enforcement to pass them on the interstate.

      e.   The officers repositioned their service vehicle behind the Buick again and observed it swerve over the solid white fog line numerous times. Due to the driver's behaviors and characteristics noted for the vehicle, the officers suspected the vehicle possibly contained illegal aliens. The officers thus activated their Border Patrol vehicle emergency equipment, and the driver yielded on I-10 eastbound, approximately one mile east of the Dillon Rd. exit.

        f.    BPA Perez approached from the driver side of the Buick and BPA Kim approached from the passenger side. Both identified themselves as United States Border Patrol Agents to the driver. BPA Perez asked AISPURO-NUNEZ for identification, in Spanish which he provided. BPA Perez directed AISPURO to step out of his vehicle and conducted a pat down for weapons. BPA Perez found a red pocketknife on AISPURO's front right pocket of his blue jeans. Meanwhile, another Border Patrol Agent who arrived on the scene as backup, BPA Masney, conducted record checks on AISPURO-NUNEZ and discovered that he was previously removed from the United States in 2011.

        g.    BPA Perez and BPA Herrera arrested defendant to further confirm his legal status. Defendant was transported to the Indio station, where he was fingerprinted. Biometric fingerprints identified defendant as JESUS ARMANDO AISPURO-NUNEZ and confirmed that he did not have legal status in the United States.

        h.    In a <u>Mirandized</u> interview, defendant told BPAs that he is a citizen of Mexico.

        **B.    AISPURO-NUNEZ's Previous Removals**

    5.    On or about April 9, 2025, I reviewed the printouts of USBP computer indices on defendant. Records checks revealed that defendant is a citizen of Mexico. Based on my training and experience, I know that the USBP computer indices track and document each time an alien is deported or excluded from the United States by USBP, was deported or excluded by United States Immigration and Customs Enforcement ("ICE") (formerly known as

4

Immigration and Naturalization Service or INS) or is granted permission to enter or re-enter the United States. The USBP computer indices confirmed that defendant had been removed, deported, and/or excluded on April 14, 2011. The USBP computer indices further indicated that defendant had not applied for, or obtained from the Attorney General or the Secretary of Homeland Security, permission to re- enter the United States.

### IV. CONCLUSION

6. For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Deportation.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 10th day of
April 2025.

_____
HONORABLE SHASHI H. KEWALRAMANI
UNITED STATES MAGISTRATE JUDGE